UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIUS VIZER,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>VIZERNEWS.COM,<br><br>　　　　　　Defendant. | Civil Action No. 11-00864 (BAH)<br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

On May 5, 2011, the plaintiff Marius Vizer brought this *in rem* action under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), seeking transfer of the domain name "VIZERNEWS.COM" to the plaintiff. Complaint, ECF No. 1 ("Compl."), at 1, 5. The website corresponding to VIZERNEWS.COM features the plaintiff's name and photograph and is seemingly dedicated to providing news about the plaintiff. *See* Pl.'s Mot. for Default J., ECF No. 8 ("Pl.'s Mot.") at 5-6; Compl. ¶¶ 18, 21. Since the plaintiff allegedly has not been able to identify the registrant of the domain name, the plaintiff brought this *in rem* action in Washington, D.C., believing that jurisdiction is proper because the Internet Corporation for Assigned Names and Numbers ("ICANN") maintains an office here.[1] *See* Pl.'s Mot. at 2-3; Compl. ¶¶ 4-7. No person claiming an ownership interest in the defendant domain name appeared. Pending before the Court is the plaintiff's Motion for Default Judgment against defendant domain name VIZERNEWS.COM pursuant to Rule 55(b) of the Federal Rules of

---

[1] Plaintiff claims to have "personal jurisdiction" in this matter, but cites the statutory provision, 15 U.S.C. § 1125(d)(2)(A), allowing for *in rem* jurisdiction. *See* Pl.'s Mot. at 2. Furthermore, the plaintiff states that this is an *in rem* action. *See id.* at 3. The Court's analysis thus focuses on whether *in rem* jurisdiction is satisfied.

Civil Procedure. *See* Pl.'s Mot. For the reasons explained below, the Court finds that it lacks *in rem* jurisdiction over this matter on the basis of ICANN's office in this judicial district. Accordingly, the plaintiff's motion will be denied and this action will be dismissed.

## I. BACKGROUND

### A. Statutory Framework

The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), signed into law in 1999, prohibits the bad faith registration of trademarks as domain names. *See* 15 U.S.C. § 1125(d); S. REP. NO. 106-140, at 4 (1999) (describing the purpose of the bill as "prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as 'cybersquatting.'"). An example of "cybersquatting" is the registration of a brand name as a domain name with the intent to sell that domain name to the owner of the mark or the highest bidder. *See* S. REP. NO. 106-140, at 5 (1999). The ACPA provides for *in rem* jurisdiction, in certain circumstances, to address the problem of cybersquatters registering domain names with false information, including aliases. *See* 15 U.S.C. § 1125(d)(2)(A); *see also* S. REP. NO. 106-140, at 10 (1999).

Under 15 U.S.C. § 1125(d)(2)(A), if certain conditions are met,[2] "[t]he owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located . . . ." 15 U.S.C. § 1125(d)(2)(A). Thus, ACPA provides for *in rem* jurisdiction based on the location of three entities: the "domain name registrar," "domain name registry," or "other domain name authority that registered or assigned the domain name." A

---

[2] These conditions are outlined *infra*.

threshold issue in this case is whether ICANN is one of the three entities which confer *in rem* jurisdiction over the defendant domain name under ACPA.

### B.     The Role of ICANN in the Domain Name System

ICANN is a not-for-profit corporation formed in 1998 and selected by the U.S. Department of Commerce to administer the internet domain name system, which links user-friendly names, such as "uscourts.gov," to unique numeric addresses that identify servers connected to the internet.[3]  *See Balsam v. Tucows Inc.*, 627 F.3d 1158, 1159 (9th Cir. 2010) ("ICANN is a private, non-profit corporation that administers the registration of internet domain names."); *see also Domain Name System*, National Telecommunications & Information Administration, U.S. Department of Commerce, http://www.ntia.doc.gov/category/domain-name-system (last visited June 19, 2012) (describing the domain name system and ICANN).

ICANN administers the domain name system with input from a Governmental Advisory Committee, in which the U.S. Department of Commerce participates.  *See ICANN*, National Telecommunications & Information Administration, U.S. Department of Commerce, http://www.ntia.doc.gov/category/icann (last visited June 19, 2012) ("The Internet Corporation for Assigned Names and Numbers (ICANN) is the not-for-profit entity responsible for the technical coordination of the Internet's domain name system (DNS) . . . [The National Telecommunications & Information Administration] represents the U.S. government in ICANN's Governmental Advisory Committee (GAC), which is structured to provide advice to the ICANN Board on the public policy aspects of the broad range of issues pending before ICANN."); *see also What Does ICANN Do?*, ICANN,

---

[3] The Court may take judicial notice of a fact, such as the role of ICANN, which is not subject to "reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b); *see also United States v. Philip Morris USA, Inc.*, No. 99-2496, 2004 WL 5355971, at *1-2 (D.D.C. Aug. 2, 2004).

http://www.icann.org/en/about/participate/what (last visited June 19, 2012) (stating that ICANN plays a "coordination role of the Internet's naming system . . . .").

As part of its coordination of the domain name system, ICANN maintains a relationship with key actors in the system, including *registries*, which operate top-level domains ("TLDs") such as ".com" or ".org" and maintain information on all domain names registered within a particular top-level domain, and *registrars*, which make domain names available to customers and register domain names with a registry. *See, e.g.*, *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010); *Dotster, Inc. v. Internet Corp. For Assigned Names and Numbers*, 296 F. Supp. 2d 1159, 1160 (C.D. Cal. 2003). The customer and owner of the domain name is the "registrant." *See Office Depot, Inc.*, 596 F.3d at 699. ICANN does not deal directly with registrants but has a contractual relationship with registries and accredits registrars. *Dotster*, 296 F. Supp. 2d at 1160 ("ICANN accredits companies known as 'registrars' that make Internet domain names available to consumers . . . . Registrars, in turn, accept requests for domain names from their customers and register those domain names with the appropriate Internet registry. ICANN also enters into separate Registry Agreements with Internet registries."); *see also What Does ICANN Do?*, ICANN, http://www.icann.org/en/about/participate/what (last visited June 19, 2012) ("ICANN draws up contracts with each registry. It also runs an accreditation system for registrars.") (internal citations omitted).

### C. Factual and Procedural Background

The plaintiff, who lives in Budapest, Hungary, has been the president of the International Judo Federation since 2007 and has long been associated with the sport. Compl. ¶¶ 1, 13-14. The plaintiff's prominence in the judo community has allegedly led to regular coverage of him in the press. *Id*. at ¶ 15. According to the Complaint, the plaintiff "has achieved extensive name

recognition in the world judo community and built a brand around his name, expertise, and reputation," such that the plaintiff's name qualifies for trademark protection under the Lanham Act. *Id*. at ¶ 16.

In August 2007, the domain name VIZERNEWS.COM, which contains the plaintiff's last name, was registered without the plaintiff's consent. *Id*. ¶ 17. The website corresponding to VIZERNEWS.COM features the plaintiff's photograph and name. *Id*. ¶ 18. Furthermore, given the use of the word "news" in the defendant domain name, it purports to offer timely information about "Vizer." Pl.'s Mot. at 5.[4]

The plaintiff has not been able to identify the person or entity responsible for registering VIZERNEWS.COM. Compl. ¶ 7. The plaintiff claims to have used due diligence to find the registrant, to no avail. *See id*. As part of that effort, the plaintiff searched the domain name's "WHOIS" record, and found that the domain name is registered to "Luther Blissett," a "multiple use name" used to hide a registrant's identity. *Id*. ¶ 8; ECF No. 8, Ex. 1 ("WHOIS search results for: VIZERNEWS.COM").[5] "WHOIS" is a database consisting of, *inter alia*, a registrant's name and address. *See, e.g.*, *CNN L.P. v. CNNews.com*, 162 F. Supp. 2d 484, 488 (E.D. Va. 2001), *aff'd in part and vacated in part*, 56 F. App'x 599 (4th Cir. 2003). The registrant also employed a "privacy service" used to hide a registrant's contact information. Compl. ¶ 9.

---

[4] The plaintiff urges the Court that "[t]he content of the website is no defense" and "[a]nalysis of the content of the [website] hosted at VIZERNEWS.COM is not necessary. . . ." Pl.'s Mot. at 5. Presumably, this argument is asserted to avoid application of the statutory exclusions, including the exclusion for "[a]ll forms of news reporting and news commentary." 15 U.S.C. § 1125 (c)(3)(B). The Court need not reach this issue since this case is resolved on other grounds.

[5] The plaintiff submitted "WHOIS" search results from the website "who.godaddy.com," which is an example of an accredited registrar. *See* ECF No. 8, Ex. 1. According to that website, "WHOIS database is a searchable list of every single domain currently registered in the world . . . . The Internet Corporation of Assigned Names and Numbers (ICANN) requires accredited registrars . . . to publish the registrant's contact information, domain creation and expiration dates and other information in the WHOIS listing as soon as a domain is registered." *See* http://who.godaddy.com/ (last visited June 19, 2012).

On May 5, 2011, plaintiff Marius Vizer filed this *in rem* action under ACPA, 15 U.S.C. § 1125(d), against the defendant domain name VIZERNEWS.COM, claiming that the unknown registrant of VIZERNEWS.COM "anonymously registered the domain name with the bad faith intent to profit or otherwise trade on Plaintiff's rights in his name." Compl. ¶ 21.  The plaintiff has made efforts to notify possible defendants of this case, but no defendant has appeared.[6]

On October 11, 2011, the plaintiff filed an Affidavit in Support of Default and the Clerk of this Court entered Default against the defendant on the following day.  *See* Aff. in Supp. of Default, ECF No. 5; Clerk's Entry of Default, ECF No. 6.  The plaintiff subsequently filed the pending motion for default judgment.  Pl.'s Mot.

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Under Federal Rule of Civil Procedure 55(b)(2), the Court may consider default judgment when a party applies for that relief.  *See* FED. R. CIV. P. 55(b)(2).  This Court "strongly favor[s] resolution of disputes on their merits, but default judgment is available when the adversary process has been halted because of an essentially unresponsive party . . . ."  *Cumis Ins. Soc'y, Inc. v. Billups*, No. 10–1478, 2010 WL 4384228, at *2 (D.D.C. Nov. 4, 2010) (internal citations and quotation marks omitted).  A default judgment is appropriate when a defendant is "a 'totally unresponsive' party and its default plainly willful, reflected by its failure to respond to

---

[6] On May 30, 2011, the plaintiff filed notice with the Court that he had complied with statutory notice obligations, including notifying (a) the domain name registry, VeriSign Inc., (b) the domain name registrar, Melbourne IT, LTD. d/b/a Internet Names Worldwide, and (c) the web host, Yahoo, Inc. of this matter by providing "written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court," pursuant to 15 U.S.C. § 1125(d)(2)(D)(i). *See* Notice Re. Service, ECF No. 2, at 1.  The plaintiff also claims to have notified the defendant of this matter by sending a "Waiver of the Service of Summons" pursuant to FED R. CIV. P. 4. *Id.* Counsel of record for the plaintiff also declares that he sent notice on May 31, 2011 to the registrant of VIZERNEWS.COM, pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). *See* Affidavit of Eric Menhart ("Menhart Aff."), Sept. 1, 2001, ECF No. 3, Ex. 1, ¶ 2.  When no person claiming an ownership interest in the defendant domain name appeared, the plaintiff sought to serve notice of this action via publication in order to satisfy the service of process requirements under 15 U.S.C. § 1125(d)(2)(B).  Pl.'s Mot. for Service by Publication, ECF No. 3, at 2; *see also* "Menhart Aff." ¶¶ 2-3.  Pursuant to the Court's Order of September 7, 2011, the plaintiff published notice of this action in *The Washington Post* on September 15, 2011. *See* Notice Re Service by Publication, ECF No. 4.  No person has responded to any notice concerning this action. *See, e.g.*, Clerk's Entry of Default, ECF No. 6.

the summons and complaint, the entry of default, or the motion for default judgment." *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Gutierrez v. Berg Contracting Inc.*, No. 99–3044, 2000 WL 331721, at *1 (D.D.C. March 20, 2000)). In the absence of a "request to set aside the default or suggestion by the defendant that it has a meritorious defense," the standard for default judgment has been satisfied. *Id.* (internal citations and quotation marks omitted); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

Entry of default judgment is not automatic, however. *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (noting that "entry of a default judgment is not automatic . . ."); *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 46 (D.D.C. 2007) (quoting *Mwani*, 417 F.3d at 6). Before entering judgment against an absent defendant, the Court must assure itself that it has both subject matter jurisdiction and personal, or, in this case, *in rem* jurisdiction. *See Enterprise Holdings, Inc. v. Enterprisecarrentals.com*, No. 11-1152, 2012 WL 527355, at *3 (E.D. Va. Jan. 30, 2012) (noting that "[a] court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment."), *adopted by* 2012 WL 527353 (E.D. Va. Feb. 16, 2012). This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and the Lanham Act, codified at 15 U.S.C. § 1125(d), but the question remains whether the Court has *in rem* jurisdiction. *See, e.g.*, *McNeil v. Whipple*, 720 F. Supp. 2d 73, 77 (D.D.C. 2010) (dismissing the complaint for lack of subject matter jurisdiction and failure to state a claim, and denying the plaintiff's motion for default judgment); *see also Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 134 (D.D.C. 2008) (rejecting plaintiffs' motion for default judgment on one of the plaintiffs' claims because the court lacked subject matter jurisdiction and dismissing the other claim for failure to state a claim).

## III. DISCUSSION

The plaintiff contends that his well-pled allegations and the defendant's failure to respond make entry of default judgment proper. *See* Pl.'s Mot. at 1. The Court finds, however, that it does not have jurisdiction over this *in rem* action. The plaintiff claims that this Court has jurisdiction because ICANN maintains an office in Washington, D.C., and is a "domain name authority" as contemplated by ACPA's *in rem* jurisdiction provisions. *See id.*, at 2-3; Compl. ¶¶ 4-6. The Court disagrees, finding that it does not have jurisdiction based on ICANN's location in this judicial district because ICANN did not "register" or "assign" the challenged domain name as required by 15 U.S.C. § 1125(d)(2)(A). The Court first reviews the plaintiff's claims regarding *in rem* jurisdiction, and then explains the statutory requirements for *in rem* jurisdiction and the reasons why ICANN does not provide a basis for *in rem* jurisdiction in this case.

### A. Plaintiff claims that ICANN is a domain name authority as contemplated by 15 U.S.C. § 1125(d)(2)(A).

The plaintiff claims he may bring suit in this judicial district under ACPA because ICANN, which maintains an office in Washington, D.C., "is a 'domain name authority' as contemplated under 15 USC 1125(d)(2)(A)." Pl.'s Mot. at 3. The plaintiff reasons that:

> Washington, D.C. is the home of the "mothership" of domain name authority: the Internet Corporation for Assigned Names and Numbers (ICANN). ICANN maintains an office at 1101 New York Avenue, NW in Washington, D.C. ICANN is the supreme domain name system (DNS) authority that "draws up contracts with each registry. It also runs an accreditation system for registrars." Accordingly, ICANN is a "domain name authority" as contemplated under 15 USC 1125(d)(2)(A).

*Id.* at 2-3 (internal citations omitted). The plaintiff does not seek to establish jurisdiction based on the location of either the domain name registrar (Melbourne IT, LTD. d/b/a Internet Names Worldwide) or the domain name registry (VeriSign, Inc.). *See* Compl. ¶ 11.

### B.     *In Rem* Jurisdiction Requirements Under 15 U.S.C. § 1125(d)(2)(A)

As noted, 15 U.S.C. § 1125(d)(2)(A) provides that "[t]he owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located" upon satisfaction of two conditions.  Those conditions are, first, that "the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section," 15 U.S.C. § 1125(d)(2)(A)(i), and, second, under 15 U.S.C. § 1125(d)(2)(A)(ii), the court finds that the owner either is not able to obtain *in personam* jurisdiction over a person who would have been a defendant (15 U.S.C. § 1125(d)(2)(A)(ii)(I)) or was not able to find a person who would have been a defendant after due diligence (15 U.S.C. § 1125(d)(2)(A)(ii)(II)).

Before considering the plaintiff's claim that he has met the two conditions for the exercise of *in rem* jurisdiction, the Court must first determine whether the civil action was properly filed in this judicial district.  ICANN is not the "domain name registrar" or "domain name registry" for the defendant domain name because the plaintiff identifies "Melbourne IT, LTD d/b/a Internet Names Worldwide" as the domain name registrar and "VeriSign, Inc." as the domain name registry.  Compl. ¶ 11.  Thus, for this Court to exercise *in rem* jurisdiction, ICANN must satisfy the first criterion under section 1125(d)(2)(A) by operating as a "domain name authority that registered or assigned the domain name."  *See* 15 U.S.C. § 1125(d)(2)(A).  As the Court explains below, ICANN is not a "domain name authority that registered or assigned the domain name" and thus its office in this judicial district does not fulfill ACPA's initial requirement for the exercise of *in rem* jurisdiction.

By the plain language of the statute, "domain name authority that registered or assigned the domain name" requires the authority to have "registered" or "assigned" the challenged domain name in order to trigger *in rem* jurisdiction under 15 U.S.C. § 1125(d)(2)(A).  Therefore, in order for ICANN to qualify as a domain name authority under 15 U.S.C. § 1125(d)(2)(A) for the purposes of this action, ICANN must have "registered" or "assigned" the domain name VIZERNEWS.COM.

The statute does not define the terms "register," "assign," or "domain name authority." The legislative history, case law, dictionaries, and other statutory provisions, however, offer clues as to the meaning of those terms.  First, the verb "register" may be defined as to "enter in a public registry," "enroll formally," or "make a record of."  BLACK'S LAW DICTIONARY 1396 (9th ed. 2009).  The statute itself makes clear that a person can "register" a domain name.  *See* 15 U.S.C. § 1125(d)(1)(A)(ii) (establishing liability for a person who "registers, traffics in, or uses" a domain name in the manner prohibited by 15 U.S.C. § 1125(d)(1)(A)).  Courts have construed "register[ing]" to cover the initial contract between a customer and registrar.  In *GoPets Ltd. v. Hise*, the court examined 15 U.S.C. § 1125(d)(1), finding that "[i]t is obvious that, under any reasonable definition, the initial contract with the registrar constitutes a 'registration' under ACPA," and concluding that the re-registration of a domain name was not a "registration" within the meaning of 15 U.S.C. § 1125(d)(1).  *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030, 1032 (9th Cir. 2011).  The initial contract between the customer and the registrar requires the registrar to register the customer's domain name with a registry, which maintains a list of all domain names within its domain.  *See, e.g.*, *Dotster*, 296 F. Supp. 2d at 1160; *see also Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 778 (N.D. Cal. 2007) ("the registry maintains the records that ultimately determine the existence and ownership of domain names."), *aff'd*, 596 F.3d 696 (9th

Cir. 2010); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 620 n.26 (E.D. Va. 2003) (noting that "in order to register a new domain name for an individual end user, the registrar sends to the registry the ADD command as well as the information the registry needs to populate its database, namely the domain name, the IP addresses of the local name servers for that domain name, the registrar, and the expiration date for the registration."). While ICANN has contractual relationships with registries, it does not "make a record" itself of any domain name registered by a registrant.

Second, "assign[ing]" refers to the allocation of the domain name or its subsequent transfer from one owner to another. Black's Law Dictionary defines the verb "assign" as "[t]o convey; to transfer rights or property." BLACK'S LAW DICTIONARY 135 (9th ed. 2009). In the domain name context, a domain name is "assigned," and the registry places the name into its database. *See, e.g.*, *CNN L.P. v. CNNews.com*, 56 F. App'x 599, 601 (4th Cir. 2003) ("When a company wants the rights to a new domain name, it contacts a registrar. The registrar submits the domain name to a registry, which enters the *assigned* domain name into a database.") (emphasis added). Furthermore, under 15 U.S.C. § 1125(d)(1)(B)(i)(VI), a court may consider, in its determination of whether a person has bad faith intent, the "person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain . . . ." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI); *see also Mashantucket Pequot Tribe v. Redican*, 403 F. Supp. 2d 184, 199 (D. Conn. 2005) (ordering the defendant "to assign the registration of the domain name Foxwood.com to Mashantucket upon condition that Mashantucket compensate Redican for his out-of-pocket costs in obtaining and maintaining the registration and in assigning the registration."). ICANN does not itself assign specific domain names to numeric internet protocol addresses or to registrants.

Third, the plain language of the statute suggests that the term "domain name authority" refers to the "domain name registrar," the "domain name registry," and other entities that have some authority over the domain name. *See* 15 U.S.C. § 1125(d)(2)(A). While the statute is silent as to the specific definition of domain name authority, the statute itself makes clear that the phrase "other domain name authority that registered or assigned the domain name," covers only entities that perform the functions of the registrar and registry by registering or assigning domain names. The legislative history further confirms this limitation. Senator Patrick Leahy, a co-sponsor of ACPA, stated that 15 U.S.C. § 1125(d)(2)(A) covers only those entities that "actually offer the challenged name," "actually place the name in a registry," or "operate the registry." 145 Cong. Rec. 31,017 (1999). As explained above, these tasks constitute the functions of the registrar and registry, which are overseen and coordinated but not performed by ICANN. In fact, Senator Leahy explicitly noted that the provision does not cover ICANN or its constituent units, stating:

> The terms "domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name" in Section 3002(a) of the Act, amending 15 U.S.C. 1125(d)(2)(a), is intended to refer only to those entities that actually place the name in a registry, or that operate the registry, and would not extend to other entities, such as the ICANN or any of its constituent units, that have some oversight or contractual relationship with such registrars and registries. Only these entities that actually offer the challenged name, placed it in a registry, or operate the relevant registry are intended to be covered by those terms.

*Id*. The legislative history thus supports a reading of the statutory provision at issue that forecloses the plaintiff's argument that ICANN is a "domain name authority" in this context, an argument which suggests the provision should be read more broadly to cover any entity with some authority within the domain name system. Simply put, ICANN's role within the domain

name system did not give it the "hands-on" role in "register[ing]" or "assign[ing]" the defendant domain name sufficient to confer *in rem* jurisdiction in this Court over this defendant.[7]

Furthermore, looking to other courts that have construed their jurisdiction over ACPA claims, this Court has not found any cases which base *in rem* jurisdiction on the location of an "other domain name authority that registered or assigned the domain name" under 15 U.S.C. § 1125(d)(2)(A). By contrast, numerous cases suggest that the location of a domain name registrar or registry fulfills the first requirement for *in rem* jurisdiction under 15 U.S.C. § 1125(d)(2)(A). *See, e.g.*, *Mattel, Inc. v. Barbie-Club.com,* 310 F.3d 293, 302 (2d Cir. 2002) (stating that "it is the presence of the domain name itself – the 'property [that] is the subject of the jurisdiction' – in the judicial district in which the registry or registrar is located that anchors the *in rem* action"); *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 259 (4th Cir. 2002) (stating that "[b]ecause the registrar with which Holmgreen registered the British domain names is based in the Eastern District of Virginia, jurisdiction is proper in that district"); *GlobalSantaFe Corp.*, 250 F. Supp. 2d at 614-15 (finding that 15 U.S.C. § 1125(d)(2)(A) is satisfied because the registry is located in the district); *America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449, 451 (E.D. Va. 2003) (*in rem* jurisdiction is proper because of the location of the registry within the district); *Gen. Nutrition Inv. Co. v. GNC-China.com*, No. 09-989, 2010 WL 2640226, at *1-3 (E.D. Va. June 09, 2010) (finding that the court had *in rem* jurisdiction based on the location of the registry and recommending that default judgment be entered against domain names), *adopted by*, No. 09-

---

[7] ICANN is also responsible for approving top-level domains ("TLDs") such as ".com" and ".org." In 2011, ICANN approved a significant expansion in the number of TLDs, starting a process that would allow "almost any word in any language" to be a TLD. Press Announcement, ICANN, *ICANN Approves Historic Change to Internet's Domain Name System: Board Votes to Launch New Generic Top-Level Domains* (June 20, 2011), available at http://www.icann.org/en/news/announcements/announcement-20jun11-en.htm (last visited June 20, 2012). For example, the top-level domain in VIZERNEWS.COM is ".com," which is not at issue here. The Court's findings do not address ICANN's approval of new top-level domains or determine whether any of ICANN's activities in the TLD approval process would make ICANN, with respect to TLDs, a "domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name" under 15 U.S.C. § 1125(d)(2)(A).

989, 2010 WL 2640223 (E.D. Va. June 28, 2010); *see also Office Depot, Inc.*, 596 F.3d at 702 (stating that "[a]lthough the current proceeding is not an action under the ACPA, the statute is authority for the proposition that domain names are personal property located wherever the registry or the registrar are located."); *Office Depot, Inc.*, 621 F. Supp. 2d at 778 (noting that the court "will follow Congress' suggestion in ACPA that a domain name exists in the location of both the registrar and the registry" and concluding that "[a]s such, this is the appropriate Court to oversee levy upon domain names"), *aff'd,* 596 F.3d 696 (9th Cir. 2010).

Given the plain language of the statute, the legislative history, the guidance from case law construing the scope of *in rem* jurisdiction over ACPA claims, and the role of ICANN, the Court concludes that ICANN is not a "domain name authority that registered or assigned" the challenged domain name, as required by 15 U.S.C. § 1125(d)(2)(A). Thus, the Court finds that the plaintiff fails to establish *in rem* jurisdiction on the basis of ICANN's office in this judicial district.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that it lacks *in rem* jurisdiction over this action on the basis of ICANN's office in this judicial district. Accordingly, this Court denies the plaintiff's Motion for Default Judgment and dismisses this action. An Order accompanies this Memorandum Opinion.

**DATED:** June 22, 2012

                                                                   /s/ *Beryl A. Howell*
                                                                    BERYL A. HOWELL
                                                                    United States District Judge